E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

April 04 2018 2:57 PM

KEVIN STOCK
COUNTY CLERK
NO: 18-2-07061-4

1

2

3

4

5

6

7        IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
          IN AND FOR THE COUNTY OF PIERCE

8

9   KROGER, INC. d/b/a FRED MEYER STORES,        NO.
    INC.,

10                                                COMPLAINT FOR BREACH OF
                    Plaintiff,                    CONTRACT, BAD FAITH, CONSUMER
11                                                PROTECTION ACT, INSURANCE FAIR
            vs.                                   CONDUCT ACT, AND DECLARATORY
12  CENTIMARK CORPORATION, BRIAN                  JUDGMENT
    RAYMORE, and ARCH INSURANCE
13  COMPANY,

14                  Defendants.

15

16      COMES NOW the Plaintiff, Kroger, Inc. d/b/a Fred Meyer Stores, Inc., by and through

17  its attorney of record, and hereby alleges as follows:

18                      I.      PARTIES

19      1.1.     Plaintiff Kroger, Inc. d/b/a Fred Meyer Stores, Inc. ("Fred Meyer") is an Ohio

20  corporation doing business in Pierce County, Washington.

21      1.2.     Defendant CentiMark Corporation ("CentiMark") is an active Pennsylvania

22  corporation, also d/b/a QuestMark Corporation. At all material times to this action, CentiMark

23  Corporation was doing business in Pierce County, Washington.

24      1.3.     Defendant Brian Raymore was at all material times the Vice-President of Safety

25

COMPLAINT - 1                        FLOYD, PFLUEGER & RINGER P.S.
                                     200 W. THOMAS ST., SUITE 500
                                     SEATTLE, WA 98119-4296
                                     TEL 206 441-4455
                                     FAX 206 441-8484                    EXHIBIT 1

1   and Risk for CentiMark, acting within the scope of his employment as a corporate

2   representative of CentiMark when communicating with Fred Meyer.

3         1.4.       Defendant Arch Insurance Company ("Arch Insurance") is an active Missouri

4   corporation with headquarters in New Jersey. At all material times to this action, Arch

5   Insurance Company insured CentiMark and was authorized to and performed business as an

6   insurer in the State of Washington, under WAOIC license number 58676.

7                             **II. JURISDICTION AND VENUE**

8

9         2.1       This Court has proper venue and jurisdiction as the Plaintiff and Defendants

10   transacted business in Pierce County, Washington, and the action complained of herein

11   occurred in whole or part in Pierce County.

12                   **III.     STATEMENT OF FACTS**

13   **UNDERLYING LAWSUIT**

14         3.1.       On September 27, 2015, customer Mary Arlene Luton ("Luton") was injured in

15   a trip and fall accident that occurred at the Fred Meyer Store located at 1100 North Meridian,

16   Puyallup, Washington.

17         3.2.       At the time of her fall, the store was undergoing a store-wide renovation, while

18   remaining open for business.

19         3.3.       At all material times, CentiMark was Fred Meyer's flooring contractor for the

20   store renovation.

21         3.4.       On December 15, 2015, Luton filed a complaint against Fred Meyer and

22   Colorado Structures, Inc. (CSI) alleging that CSI "was engaged in ongoing construction work

23   at the retail grocery store owned and operated by Fred Meyer"; performance of that work

24   included "work in the aisle at check stand #2;" and on the floor in the aisle at check stand #2

25

COMPLAINT - 2

FLOYD, PFLUEGER & RINGER P.S.

200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1   "there was a circular access cover that had the appearance of a small manhole cover, which

2   covered an access to electrical equipment below the floor." Underlying Complaint ¶ 3.3, ¶ 4.4,

3   ¶ 4.5.

4        3.5.   The complaint further alleges that "[t]he cover had been placed there by

5   Defendant CSI, but the presence of that cover and the condition of the floor around that cover

6   was known to CSI and was also known or should have been known to Defendant Fred Meyer."

7   Underlying Complaint ¶ 4.5.

8

9        3.6.   The complaint further alleges that "there was a separation, or crack between the

10   circular access cover and the floor in the aisle at check stand #2 that was caused by the

11   placement of the circular access cover on the floor in that aisle. That separation caused an

12   uneven walking surface and that separation was large enough to catch the heel of a shoe. The

13   separation between the circular access cover and the floor in the aisle at check stand #2 was

14   known or should have been known to the Defendants, but was not obvious to customers such as

15   Plaintiff." Underlying Complaint ¶ 4.6 to 4.7.

16        3.7.   The complaint alleges that plaintiff's shoe heel got caught in the separation or

17   crack between a circular access cover and the surrounding floor in check stand aisle #2, which

18   caused her to lose her balance, trip, fall, and sustain serious injuries. Underlying Complaint ¶¶

19   4.10 to 4.13.

20

21        3.8.   The December 15, 2015 complaint alleges that defendants CSI and Fred

22   Meyer's failure to maintain the premises in a safe and proper condition was a proximate cause

23   of her injuries; that CSI and Fred Meyer should that the condition on the floor "constituted a

24   condition that involved an unreasonable risk of harm" to plaintiff; and that CSI and Fred Meyer

25   are both negligent. Underlying Complaint ¶¶ 4.14 to 4.17.

COMPLAINT - 3

FLOYD, PFLUEGER & RINGER P.S.

200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1    3.9.    On April 1, 2016, Luton filed an amended complaint, added CentiMark as a

2  party, and alleged that CentiMark "was engaged as a flooring contractor" by Fred Meyer and

3  was "doing ongoing flooring work as part of the renovation project" at Fred Meyer. Underlying

4  Amended Complaint ¶ 4.5.

5    3.10.    The amended complaint alleges that the "cover had been placed there prior to

6  the renovation work underway at the store.  The presence of that cover and the condition of the

7  floor around that cover was known to CM/QM [CentiMark], CSI, and it also was known or

8  should have been known to Defendants CSI [sic] and Fred Meyer." Underlying Amended

9  Complaint ¶ 5.5.

10

11    3.11.    The amended complaint further alleges that "there was a separation, or crack

12  between the circular access cover and the floor in the aisle at check stand #2 that was caused by

13  the removal of the flooring material, vinyl composition tile (VCT), on the floor in check stand

14  #2. That separation created an uneven walking surface and that separation was large enough to

15  catch the heel of a shoe." Underlying Amended Complaint ¶ 5.6.

16    3.12.    The amended complaint alleges that the "VCT on the floor in check stand #2

17  had been removed by employees of CM/QM [CentiMark]. That was done as part of the store

18  renovation" and the "separation between the circular access cover and the floor in the aisle at

19  check stand #2 was known or should have been known to the Defendants." Underlying

20  Amended Complaint ¶¶ 5.7 to 5.8.

21    3.13.    Luton alleged that Fred Meyer, CentiMark, and CSI were negligent because they

22

23  failed to maintain the premises "in a safe and proper condition;" failed to exercise reasonable

24  care concerning the condition of the floor around the access cover; and failed to protect Luton

25  from an unreasonable risk of harm. Underlying Amended Complaint ¶¶ 5.15 to 5.18.

COMPLAINT - 4

FLOYD, PFLUEGER & RINGER P.S.
200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

3.14.   Luton's complaint and amended complaint are incorporated as if fully set forth herein.

3.15.   Luton settled her claim against CSI in March 2017 for USD $25,000.00.

3.16.   Luton, Fred Meyer, and CentiMark submitted the case to a binding arbitration, held on May 8-9, 2017, with CSI as an "empty chair" defendant.

3.17.   On May 16, 3017, the arbitrator found that Fred Meyer was 80 percent negligent; CSI was 20 percent negligent; and that Luton and CentiMark were fault free.

3.18.   The arbitrator's decision was reduced to Findings of Fact and Conclusions of Law, and a Judgment by the Pierce County Superior Court. Fred Meyer satisfied the Judgment.

**FRED MEYER TENDERED DEFENSE AND INDEMNITY TO CENTIMARK BASED (1) ON THE CONTRACT; AND (2) FRED MEYER'S STATUS AS AN ADDITIONAL INSURED, WHICH CENTIMARK DENIED.**

3.19.   Based on information and belief, CentiMark maintains a large Self-Insured Retention (SIR) limit for its commercial liability policy.

3.20.   The Master Services Agreement between Fred Meyer and CentiMark expressly required CentiMark to defend, indemnify and hold Fred Meyer harmless. The provision states as follows:

### INDEMNIFICATION

Polishing Installer will indemnify and hold Kroger, its affiliates and subsidiaries harmless from and against all suits, proceedings at law or in equity, claims, liabilities, costs, payments and expenses (including reasonable attorneys' fees) asserted against Kroger or incurred by Kroger, arising out of or in connection with (i) breach of any representation, warranty or obligation hereunder, or (ii) any claim for damages to property or injuries to persons, caused by or resulting from the willful or negligent acts or omissions of Polishing Installer Personnel.

Additionally, the Hold Harmless Agreement executed by and between CentiMark Corporation and The Kroger Co. on 6/29/12 provides:

COMPLAINT - 5

FLOYD, PFLUEGER & RINGER P.S.
200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1    The undersigned will indemnify, defend and save harmless Kroger and its
     directors, officers, employees, agents, contractors, successors and assigns from
2    and against all costs (including workers' compensation costs), claims, suits,
     proceedings, damages, expenses (including reasonable attorneys' fees and costs
3    of suit), paid or incurred or suffered by Kroger in connection with or arising out
     of or related to Kroger's purchase, use, sale, or offering for sale the Items,
4    except if such liability is caused by the sole negligence or willful act of Kroger
     or its employees.*
5

6    *NOTWITHSTANDING ANY PROVISIONS TO THE CONTRARY,
     CONTRACTOR'S OBLIGATION TO DEFEND, INDEMNITY AND HOLD
7    HARMLESS IS LIMITED TO DAMAGES, COSTS AND LOSSES CAUSED
     BY   CONTRACTOR'S   NEGLIGENT   ACTS   OR   OMISSIONS   IN
8    PERFORMING THE WORK UNDER THIS AGREEMENT TO THE
     EXTENT AND IN PROPORTION TO CONTRACTOR'S COMPARATIVE
9    DEGREE OF FAULT.

10

11       3.21.   In addition, the Master Services Agreement expressly required that CentiMark

12   obtain and maintain insurance coverage and identify the Kroger Co. as an additional insured

13   under the policy. The insurance provision set forth in the Agreement, provides in part, as

14   follows:

15                                    **INSURANCE**

16       Polishing Installer will provide the insurance specified on Exhibit C. Polishing
     Installer will maintain at all times while providing the services to Kroger, at
17   Polishing Installer's own cost and expense, general commercial liability
     insurance coverage in the amount of $3,000,000 per occurrence. Polishing
18   Installer may comply with the required "per occurrence" limit through a
     combination of primary and excess liability insurance policies. The insurance
19   must be primary and not excess or contributing with any insurance or self-
     insurance maintained by Kroger. Polishing Installer will deliver to Kroger prior
20   to performing services a Certificate of Insurance naming The Kroger Co. and
     Kroger's affiliates and subsidiaries as additional insureds.
21

22       3.22.   Pursuant to this and other conditions in the Agreement, Kroger Co. was to be

23   included as an additional insured under the applicable liability coverage obtained and

24   maintained by CentiMark, including but not limited to its SIR.

25

COMPLAINT - 6                          FLOYD, PFLUEGER & RINGER P.S.
                                       200 W. THOMAS ST., SUITE 500
                                       SEATTLE, WA  98119-4296
                                       TEL 206 441-4455
                                       FAX 206 441-8484          EXHIBIT 1

3.23.   CentiMark and/or Willis of Pennsylvania, Inc. (Centimark's insurance broker) produced an ACORD Certificate of Liability Insurance identifying the certificate holder as "The Kroger Company is included as an Additional Insured in regards to General Liability and Auto Liability, but solely as respect to work performed by or on behalf of the Named Insured in connection with the described project per the written contract."

3.24.   The certificate named Kroger Co. as an additional insured under CentiMark's Commercial General Liability Policy issued by Arch Insurance, Policy No. 11PKG8900707, effective 5/12/2013 to 5/1/2014. Based on information and belief a Certificate of Liability exists, but cannot be currently located, with an effective policy inclusive of September 2015.

3.25.   The allegations and claims in Luton's amended complaint triggered CentiMark's contractual duty to defend Fred Meyer as its additional insured pursuant to the Agreement. The allegations and claims in Luton's amended complaint were "arising out of or in connection with . . . injuries to persons, caused by or resulting from the willful or negligent acts or omissions of Polishing Installer Personnel," namely, at the time of the incident, "there was a separation, or crack between the circular access cover and the floor in the aisle at check stand #2 that was caused by the removal of the flooring material, vinyl composition tile on the floor in check stand aisle #2. That separation created an uneven walking surface and that separation was large enough to catch the heel of a shoe." Underlying Amended Complaint ¶ 5.6. Further, the "VCT on the floor in check stand aisle #2 had been removed by employees of CM/QM. That was done as part of the store renovation." Underlying Amended Complaint ¶ ¶¶ 5.7 to 5.8.

3.26.   Fred Meyer tendered the duty to defend Luton's claim to CentiMark by letter dated March 18, 2016, requesting a response by April 1, 2016.

COMPLAINT - 7

FLOYD, PFLUEGER & RINGER P.S.
200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1    3.27.   Fred Meyer, via the March 18, 2016 letter to CentiMark, also tendered the duty

2    to defend based CentiMark's contractual requirement to endorse Fred Meyer as an additional

3    insured on its commercial liability policy.

4        3.28.   Defendant Brian Raymore, as the corporate representative for CentiMark, by

5    letter dated March 21, 2016, wrongfully and unreasonably denied Fred Meyer's tender of

6    defense, contending that: (1) the initial December 15, 2015 complaint did not identify

7    CentiMark; (2) CSI was responsible for the electrical access covers and the lowering of the

8    electrical cover and floor drains "is not in QuestMark's contract responsibilities"; and (3) on

9    Sunday, September 27, 2015, the day of the accident, QuestMark was not at the site and

10   therefore was not controlling the premises.

11   

12       3.29.   Fred Meyer, by letter dated April 25, 2016, provided the amended complaint to

13   CentiMark, which named CentiMark as a party against whom causes of action were asserted as

14   arising from its work at Fred Meyer. The April 25, 2016 letter was Fred Meyer's second

15   request tender of defense and indemnity to CentiMark based (1) on the contract; and (2) on

16   Fred Meyer's endorsement as an additional insured within CentiMark's SIR.

17       3.30.   Defendant Brian Raymore, as the corporate representative for CentiMark, by

18   letter dated May 6, 2016, acknowledged that the amended complaint identified causes of action

19   against CentiMark, but nevertheless ignored its contractual duties and wrongfully and

20   unreasonably denied Fred Meyer's second tender of defense of Luton's claims, stating that Fred

21   Meyer "failed to recognize some important facts," namely that (1) CentiMark was not present

22   in the store when Luton fell; and (2) Fred Meyer "inspected our work area and deemed it to be

23   acceptable for public access."

24   

25   

COMPLAINT - 8

FLOYD, PFLUEGER & RINGER P.S.

200 W. THOMAS ST., SUITE 500.
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1        3.31.  Fred Meyer, by later dated March 24, 2017, submitted its final tender of defense

2    to CentiMark and Arch Insurance based on CentiMark's contractual obligations and Fred

3    Meyer's endorsement as an additional insured on Arch Insurance's policy and/or CentiMark's

4    SIR limits.

5        3.32.  Defendant Brian Raymore, as the corporate representative for CentiMark

6    ignored the allegations in plaintiff's amended complaint, and by letter dated March 28, 2017,

7    wrongfully and unreasonably denied its contractual duty to defend or indemnify Fred Meyer

8    pursuant to the contract and pursuant to Fred Meyer's status as an additional insured.  Instead,

9    CentiMark erroneously stated that its "duty to defend and provide additional insured coverage

10   to Kroger is driven by the contract and scope of work. It is very clear that CentiMark's contract

11   and scope of work does not include work on the circular access covers, electrical clean-out

12   boxes or sewage clean-out boxes. All those access covers are the responsibility of the general

13   contractor, CSI. CentiMark's contract and scope of work were clearly limited to the actual

14   concrete floor. The raising or lowering of any access panels was the responsibility of the

15   general contractor. It is our position that CSI is the party responsible to provide a defense and

16   indemnification to Kroger in this matter."

17   

18   **FRED MEYER TENDERED DEFENSE AND INDEMNIFICATION TO ARCH INSURANCE, WHO**

19   **NEVER RESPONDED.**

20       3.33.  The allegations and claims in Luton's amended complaint triggered Arch

21   Insurance's contractual duty to defend Fred Meyer as its additional insured to the extent

22   CentiMark's SIR did not apply. The allegations and claims in Luton's amended complaint were

23   "arising out of or in connection with . . . injuries to persons, caused by or resulting from the

24   willful or negligent acts or omissions of Polishing Installer Personnel," namely, at the time of

25   

COMPLAINT - 9

FLOYD, PFLUEGER & RINGER P.S.
200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1   the incident, "there was a separation, or crack between the circular access cover and the floor in

2   the aisle at check stand #2 that was caused by the removal of the flooring material, vinyl

3   composition tile on the floor in check stand aisle #2. That separation created an uneven walking

4   surface and that separation was large enough to catch the heel of a shoe." Underlying Amended

5   Complaint ¶ 5.6. Further, the "VCT on the floor in check stand aisle #2 had been removed by

6   employees of CM/QM. That was done as part of the store renovation." Underlying Amended

7   Complaint ¶ ¶¶ 5.7 to 5.8.

8
9       3.34.   Fred Meyer, by letter dated June 14, 2016, <u>first</u> tendered the duty to defend

10   Luton's claim to Arch Insurance, CentiMark's insurer, based Fred Meyer's endorsement as an

11   additional insured on Arch Insurance's policy.  Fred Meyer requested a response by July 15,

12   2016. Arch Insurance did <u>not</u> respond.

13      3.35.   Fred Meyer, by letter dated September 14, 2016, submitted its <u>second</u> tender of

14   defense of Luton's claim to Arch Insurance, CentiMark's insurer, based on Fred Meyer's

15   endorsement as an additional insured on Arch Insurance's policy. Fred Meyer requested a

16   response by September 30, 2016. Arch Insurance did <u>not</u> respond.

17      3.36.   Fred Meyer, by email communication dated November 22, 2016, requested a

18   response from Arch Insurance. Arch Insurance did <u>not</u> respond.

19      3.37.   Fred Meyer, by email communication dated December 15, 2016, requested a

20   response from Arch Insurance. Arch Insurance did <u>not</u> respond.

21      3.38.   Fred Meyer, by email communication dated February 10, 2017, requested a

22   response from Arch Insurance. Arch Insurance responded via email communication on

23   February 13, 2017 that "I'm currently reviewing this matter and will call you to discuss

24   further."

25

COMPLAINT - 10

FLOYD, PFLUEGER & RINGER P.S.
200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

3.39.   Fred Meyer followed up with numerous voice mails to Arch Insurance between February 14 and February 23, 2017.  None was returned or acknowledged.

3.40.   Fred Meyer, by email communication dated February 23, 2017, requested a response from Arch Insurance. Arch Insurance did <u>not</u> respond.

3.41.   Fred Meyer, by email communication dated March 2, 2017, requested a response from Arch Insurance. Arch Insurance did <u>not</u> respond.

3.42.   Throughout the Luton litigation, Arch Insurance wrongfully and unreasonably ignored Fred Meyer's tender of Luton's claim based on its endorsement as an additional insured on Arch Insurance's policy.

## IV.    CAUSES OF ACTION

**BREACH OF CONSTRUCTION CONTRACT: DEFENDANT CENTIMARK**

4.1.   Fred Meyer repeats, reiterates, and re-alleges each and every allegation of the preceding paragraphs as if fully set forth here, verbatim and fully at length.

4.2.   CentiMark entered into a binding written contract with Fred Meyer. CentiMark owed a contractual duty to defend and indemnify Fred Meyer "from and against all suits, proceedings at law or in equity, claims, liabilities, costs, payments and expenses (including reasonable attorneys' fees) asserted against Kroger or incurred by Kroger, arising out of or in connection with any claim for . . . injuries to persons, caused by or resulting from the willful or negligent acts or omissions of Polishing Installer Personnel."

4.3.   CentiMark breached its contractual duty to defend Fred Meyer from April 1, 2016, the date that Luton filed the amended complaint until May 16, 2017, the date that the arbitrator determined that CentiMark was not negligent. CentiMark's duty existed independently of any obligations that CentiMark's insurer may have owed to Fred Meyer.

COMPLAINT - 11

FLOYD, PFLUEGER & RINGER P.S.
200 W. THOMAS ST., SUITE 500
SEATTLE, WA · 98119-4296
TEL 206 441-4455
FAX 206 441-8484

**EXHIBIT 1**

1   CentiMark breached its contractual duty to defend Fred Meyer because under any reasonable

2   interpretation, Luton's claims and allegations in her complaint were "were "arising out of or in

3   connection with . . . injuries to persons, caused by or resulting from the willful or negligent acts

4   or omissions of Polishing Installer Personnel."

5       4.4.    As a direct and proximate result of CentiMark's failure to fulfill its contractual

6   duty to pay for Fred Meyer's defense costs and attorneys' fees in the Underlying Lawsuit, Fred

7   Meyer incurred substantial damages in the form of defenses costs and attorneys' fees that

8   should have been paid by CentiMark pursuant to its contractual obligations in its contract with

9   Fred Meyer.

10  

11  **DECLARATORY JUDGMENT, ADDITIONAL INSURED: CENTIMARK SIR AND ARCH INSURANCE**

12      4.5.    Fred Meyer repeats, reiterates, and re-alleges each and every allegation of the

13  preceding paragraphs as if fully set forth here, verbatim and fully at length.

14      4.6.    There presently exists an actual, present, and existing dispute between Fred

15  Meyer and Defendants CentiMark and Arch Insurance who have genuine and opposing

16  interests concerning whether the terms and conditions of the SIR, primary and/or excess

17  maintained by CentiMark and/or issued by Arch Insurance obligate those insurers and/or self-

18  insurers to defend or indemnify Fred Meyer as their additional insureds in connection with the

19  claims asserted in the Underlying Lawsuit.

20  **BREACH OF INSURANCE CONTRACT: ARCH INSURANCE**

21  

22      4.7.    Fred Meyer repeats, reiterates, and re-alleges each and every allegation of the

23  preceding paragraphs as if fully set forth here, verbatim and fully at length.

24      4.8.    Arch Insurance's unreasonable and unfounded refusal to defend and indemnify

25  its additional insured, Fred Meyer, without reservation and deny coverage in connection with

COMPLAINT - 12

FLOYD, PFLUEGER & RINGER P.S.

200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1  the Underlying Lawsuit was a breach of its insurance contract with its additional insured, Fred

2  Meyer.

3      4.9.    As a direct and proximate result of the breaches of the insurance contract, Fred

4  Meyer has suffered damages in an amount to be proven at trial.

5  **BREACH OF SELF-INSURED RETENTION POLICY: CENTIMARK**

6      4.10.   Fred Meyer repeats, reiterates, and re-alleges each and every allegation of the

7  preceding paragraphs as if fully set forth here, verbatim and fully at length.

8      4.11.   CentiMark's unreasonable and unfounded refusal to defend and indemnify its

9  additional insured, Fred Meyer, without reservation and deny coverage in connection with the

10 Underlying Lawsuit was a breach of its self-insured retention policy or insurance contract with

11

12 its additional insured, Fred Meyer.

13     4.12.   As a direct and proximate result of the breaches of the SIR policies or insurance

14 contracts, Fred Meyer has suffered damages in an amount to be proven at trial.

15 **BAD FAITH CLAIMS HANDLING: ARCH INSURANCE, CENTIMARK, BRIAN RAYMORE**

16     4.13.   Fred Meyer repeats, reiterates, and re-alleges each and every allegation of the

17 preceding paragraphs as if fully set forth here, verbatim and fully at length.

18     4.14.   RCW 48.01.030 states that "The business of insurance is one affected by public

19 interest, requiring that all persons be actuated by good faith, abstain from deception, and

20 practice honest and equity in all insurance matters. Upon the insurer, the insured, their

21 providers, and their representatives rests the duty to preserving inviolate the integrity of

22

23 insurance."

24     4.15.   RCW 48.01.070 defines "person" as "any individual, company, insurer,

25 association, organization, reciprocal or interinsurance exchange, partnership, business trust, or

COMPLAINT - 13

FLOYD, PFLUEGER & RINGER P.S.
200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1   corporation."

2   4.16.   Arch Insurance, CentiMark and Brian Raymore each had a duty to act in good

3   faith in their dealings with Fred Meyer.

4   4.17.   Arch Insurance, CentiMark, and Brian Raymore's unreasonable and unfounded

5   refusal to defend or indemnify their additional insured, Fred Meyer, without reservation and

6   deny coverage in connection with the Underlying Lawsuit are all breaches of its duty of good

7   faith and fair dealing owed to its additional insured, Fred Meyer, as required under Washington

8   statutory law (RCW 48.01.030; and RCW 48.30 *et seq.*, The Insurance Fair Conduct Act);

9   regulatory law (WAC 284-30, The Unfair Claims Settlement Practices Regulation); as well as

10   common law, despite there being adequate time and information from which to make coverage

11   determinations and/or issue a response letter with respect Fred Meyer's demand for a defense

12   or indemnity of the Underlying Lawsuit, based on Fred Meyer's endorsement as an additional

13   insured.

14   4.18.   As a direct and proximate result of the breaches of their duties under statutory

15   and regulatory law, as well as breaches of good faith and fair dealing in denying coverage, Fred

16   Meyer has suffered damages in an amount to be proven at trial.

17   **CONSUMER PROTECTION ACT VIOLATIONS: ARCH INSURANCE, CENTIMARK, BRIAN RAYMORE**

18   4.19.   Fred Meyer repeats, reiterates, and re-alleges each and every allegation of the

19   preceding paragraphs as if fully set forth here, verbatim and fully at length.

20   4.20.   Arch Insurance, CentiMark, and Brian Raymore's unreasonable and unfounded

21   refusal to defend or indemnify their additional insured, Fred Meyer, and deny coverage is a

22   violation of their statutory obligation to act in good faith in all insurance matters and constitutes

COMPLAINT - 14

FLOYD, PFLUEGER & RINGER P.S.
200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1   *per se* violations of the Consumer Protection Act, RCW 19.86 *et seq.*

2   4.21.   As a direct and proximate result of its *per se* violations of the Consumer

3   Protection Act, RCW 19.86 *et seq.*, Fred Meyer has suffered damages in an amount to be

4   proven at trial.

5   OLYMPIC STEAMSHIP FEES: ARCH INSURANCE, CENTIMARK AND BRIAN RAYMORE

6   4.22.   Arch Insurance, CentiMark, and Brian Raymore have compelled Fred Meyer to

7   initiate this action to obtain the benefits of its insurance policy and/or SIR, based on Fred

8   Meyer's endorsement as an additional insured, and under the *Olympic Steamship* doctrine, Fred

9   Meyer is entitled to an award of its litigation costs, expenses, and attorneys' fees incurred in

10  obtaining relief in this action.

11

12                          **V.  PRAYER FOR RELIEF**

13  WHEREFORE, Fred Meyer prays for a judgment as follows:

14  5.1   Declaring that Arch Insurance and CentiMark are obligated to defend and

15  indemnify Fred Meyer, its additional insured, in connection with Plaintiff Luton's claims in the

16  Underlying Lawsuit pursuant to the terms and conditions of Arch Insurance's policy and/or

17  CentiMark's SIR;

18  5.2   For damages directly and proximately caused by CentiMark's breach of its

19  construction contract with Fred Meyer;

20  5.3   All damages directly and proximately caused by Arch Insurance's breach of its

21  insurance contract and/or CentiMark's breach of its SIR with the additional insured, Fred

22  Meyer;

23  5.4   All damages directly and proximately caused by Arch Insurance, CentiMark,

24

25  and/or Brian Raymore's breach of their duties of good faith and fair dealings under Washington

COMPLAINT - 15

FLOYD, PFLUEGER & RINGER P.S.

200 W. THOMAS ST., SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

EXHIBIT 1

1   statutory, regulatory, and common law, including treble damages under the Insurance Fair

2   Conduct Act, RCW 48.30 *et seq.*;

3       5.5     All damages directly and proximately caused by Arch Insurance, CentiMark

4   and/or Brian Raymore's *per se* violations of the Consumer Protection Act, RCW 19.86 *et seq.*

5   for violating their statutory obligation to act in good faith in all insurance matters, including

6   treble damages, court costs, and attorneys' fees;

7       5.6     Awarding Fred Meyer the sum expended for reasonable litigation expenses and

8   attorneys' fees under the *Olympic Steamship* doctrine;

9

10      5.7     For an award of costs pursuant to RCW 7.24.100;

11      5.8     For prejudgment interest at the highest allowable rate on all liquated amounts

12  including, but not limited to all attorneys' fees, costs, and expenses incurred by Fred Meyer in

13  Fred Meyer's defense against claims asserted in the Underlying Lawsuit;

14      5.9     For consequential damages resulting from each defendant's breach;

15      5.10    For leave to amend this Complaint based on information or evidence revealed in

16  discovery or at trial; and

17      5.11    For such other and further relief as this Court deems just and equitable.

18      DATED this ____ day of April, 2018.

19

20                                      FLOYD, PFLUEGER & RINGER, P.S.

21

22      By: _____

23          Thomas B. Nedderman, WSBA #28944

            Amber L. Pearce, WSBA #31626

24          Attorneys for Fred Meyer Stores, Inc.

25

COMPLAINT - 16                          FLOYD, PFLUEGER & RINGER P.S.

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

April 04 2018 2:57 PM

KEVIN STOCK
COUNTY CLERK
NO: 18-2-07061-4

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR PIERCE COUNTY

| | |
|---|---|
| INC. D/B/A FRED MEYER STORES, INC. KROGER<br>  Plaintiff(s)<br><br>                       vs.<br><br>CENTIMARK CORPORATION<br>  Defendant(s) | NO.  18-2-07061-4<br><br>**ORDER ASSIGNING CASE TO JUDICIAL<br>DEPARTMENT AND SETTING REVIEW<br>HEARING DATE(PCLR3/PCLR40)**<br><br>Judge: **Jerry Costello**<br>Department: **07**<br>Docket Code: **ORACD** |

**Notice to Plaintiff/Petitioner(s):**
* Case filed, then served: Plaintiff(s)/Petitioner(s) shall serve a copy of this Order Assigning Case to Judicial Department
  on the Defendant(s)/Respondent(s) along with a copy of the Summons and Complaint.
* Case served, then filed: Plaintiff(s)/Petitioner(s) shall serve a copy of this Order Assigning Case to Judicial Department within five (5)
  court days of filing.
* Service by publication pursuant to court order: Plaintiff(s)/Petitioner(s) shall serve a copy of this Order Assigning Case to Judicial
  Department within five (5) court days of the Defendant(s)/Respondent(s) first response or appearance.

**Trial Date:**
A trial date may be obtained by filing a 'Note of Issue' for assignment of a trial date by noon at least six (6) court days prior to the date
fixed for the mandatory hearing date set out below.

> If a trial date is NOT obtained, failure to appear on the date below may result in dismissal of the case by the Court. Further, if the case
> has been fully resolved and all final papers have been entered by the Court, no appearance is required.
>
> **Mandatory Hearing Date: July 27, 2018 at 9:00 AM**
>
> At the time of this mandatory hearing , the Court may provide you with a Case Schedule which may include the trial date, if
> necessary. Failure to appear on this date may result in dismissal of the case by the Court.

**Cases Agreed or by Default:**
If you settle your case by entry of an order of default or agreement and all of the appropriate time requirements have been met, you
may file a 'Note for Commissioner's Calendar to appear before a Court Commissioner for entry of all final papers unless presentation is
allowed in the Commissioner's Ex Parte Department.

_____           _____
April 4, 2018                                              Jerry Costello
Date                                                          Department 07

linxcrt/supAdmin/oracd.rptdesign

EXHIBIT 1